**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANTONIO DOMINGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 07-2105 (RJL) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

The District of Columbia and Vincent Gray, Chairman of the Council of the

District of Columbia, through counsel, join in the instant opposition to Plaintiff's Motion

for Preliminary Injunction and aver that Plaintiff fails to meet any of the elements

required for emergency injunctive relief.

Plaintiff's complaint and Motion for Preliminary Injunction are equally

unintelligible and fail to provide sufficient notice to Defendants as to the claims, resulting

in unnecessary difficulty in responding to what are, ultimately, meritless claims.

Moreover, because Plaintiff has not effected service, for the reasons stated in the

District's pending Motion to Dismiss, this Court cannot entertain his Motion for

Preliminary injunction.  However, based on the Court's briefing schedule, Defendants

respond accordingly.

WHEREFORE, for the reasons stated in the accompanying memorandum of

points and authorities,[1] Defendants respectfully request that the Court deny Plaintiff's

Motion for Preliminary Injunction.  Attached is a proposed order.

---

[1] Defendants have submitted a combined memorandum of points and authorities for the opposition to
Plaintiff's Motion for Preliminary Injunction and for Defendant's Motion to Dismiss on substantive
grounds filed herewith.  It is in the interest of judicial economy to consider these matters in tandem.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of
Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity I Section
Civil Litigation Division

___/s/  Jayme B. Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625
Jayme.Kantor@dc.gov
Counsel for Defendant the District of Columbia

Joined by:

____/s/ John Hoellen_____
JOHN HOELLEN, #450354
Deputy General Counsel
Office of the General Counsel
Council of the District of Columbia
1350 Pennsylvania Avenue, N.W. - Suite 4
Washington, D.C.  20004
P(202) 724-8026
F(202) 724-8129 (facsimile)
Jhoellen@dccouncil.us
Counsel for Defendant Vincent Gray,
Chairman of the Council of the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTONIO DOMINGUEZ,      )
                            )
        Plaintiff,         )
                            )     Case No.: 07-2105 (RJL)
        v.            )
                            )
DISTRICT OF COLUMBIA, et. al.  )
                            )
        Defendants.     )
_____)

**COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Although Plaintiff's Motion for Preliminary Injunction provides no more clarity of Plaintiff's grievances than does his initial Complaint, the Defendants oppose the emergency injunction on the basis that it fails to satisfy any of the necessary elements.  As a prerequisite to a preliminary injunction, Plaintiff must sufficiently plead his case.  Because he fails to meet this prerequisite, the Court should simultaneously deny the preliminary injunction and dismiss the complaint. Defendants respond to the motion for preliminary injunction and move to dismiss on the grounds set forth in this combined memorandum.

In order to obtain emergency injunctive relief, plaintiff must demonstrate: 1) a substantial likelihood of success on the merits; 2) irreparable injury in the absence of an injunction; 3) less injury to the non-moving party if an injunction is ordered; and 4) that a preliminary injunction is consistent with the public interest.  *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C.Cir. 1998).  Interim injunctive

relief is "an extraordinary and drastic remedy." *Masurek v. Armstrong*, 520 U.S. 968, 972 (1997). Because interim relief is such an extraordinary form of judicial relief, courts should grant it sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). Such a remedy is not appropriate here. Plaintiff's motion for injunctive relief cannot satisfy any of the elements and should, therefore, be denied.

**A) Plaintiff Has Not Demonstrated a Substantial Likelihood of Success on the Merits.**

The Court needs only a cursory review of the merits of Plaintiff's claims to conclude that Plaintiff has not satisfied the very high standard of proof to entitle him to a preliminary injunction. Nonetheless, even such a brief analysis shows that the substantive issues weigh heavily against Plaintiff being able to satisfy the first prong of the test for entitlement to this injunctive relief he seeks. Plaintiff's failure to meet the first element of a preliminary injunction, substantial likelihood of success on the merits, inevitably coincides with the reasons the Court should grant Defendants' corresponding Motion to Dismiss. Plaintiff's claim should be dismissed because he fails to meet Federal Rules of Procedure, namely, Fed. R. Civ. P. 8(a), 12(b)(6), 12(e), and 56. Thus, Defendants motion to dismiss overlaps with its opposition to the preliminary injunction and draws the ultimate conclusion that because Plaintiff's claim is insufficient, the Court should not only deny his motion for preliminary injunction, but should dismiss the complaint in its entirety.

"The court is obligated to appraise the merits of a case on a request for preliminary injunction." *Delaware & H. R. Co. v. United Transp. Union*, 450 F.2d 603,

619 (D.C. Cir. 1971). Plaintiff's complaint and motion for preliminary injunction fail to clearly articulate the merits of his case in a way that allows Defendants to ascertain their potential liability. Even if defendants were forced to speculate as to what Plaintiff is claiming, which they need not do under the cases interpreting Fed. R. Civ. P. 12(b)(6), plaintiff fails to demonstrate a likelihood of success on the merits of his case.

    1) *Plaintiff's complaint fails to comply with Fed. R. Civ. P. 8.*

Plaintiff is required to make a short and plain statement showing that he is entitled to relief. Fed. R. Civ. P. 8(a). His complaint fails to state any cognizable legal claims for relief except for the bare and unintelligible assertion of some type of disenfranchisement, discrimination, and conspiracy. There is, however, no causal connection between the alleged actions by the Defendants and any actual disenfranchisement or discrimination by the Council of the District of Columbia ("Council"), or any conspiracy between Council and political incumbents. The loaded words Plaintiff uses appear to be nothing more than terms of art plugged into Plaintiff's filings. Plaintiff fails to link the legislation he questions, the Election Date Amendment Act of 2007 (the "Act"), to any actual harm. His motion for preliminary injunction does not elaborate on his complaint and merely perpetuates speculation by Defendants and the Court as to what Plaintiff is actually claiming.

    2) *Plaintiff's complaint would not withstand motions pursuant to Fed. R. Civ. P. 12(b)(6), 12(e), or 56.*

Plaintiff's complaint not only fails the basic requirement of a short and plain statement of entitlement to relief under Rule 8(a), but even if such could be gleaned from his filings, his complaint still fails under other rules of civil procedure.

*a) Rule 12(b)(6)*

A motion to dismiss pursuant to Rule 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, Plaintiff's right to relief does not rise above a speculative level. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Because Plaintiff's complaint and motion for preliminary injunction[1] are so difficult to comprehend and do not rise to the level of a cognizable legal claim, Defendants can do nothing *but* speculate. Plaintiff's motion for preliminary injunction tries to allege a conflict between the Help America Vote Act of 2002 ("HAVA"), 107 P.L. 252; 116 Stat. 1666; 42 U.S.C. § 15301 *et seq.*, and the Election Date Amendment Act of 2007 (the "Act"), 54 D.C. Reg. 8018; D.C. Code § 1-1001.01, § 1-1001.05, and § 1-1001.10(a). *Plaintiff's Memorandum in Support of Motion for Preliminary Injunction* ("Pl. Mem."), ¶ 25. This argument is unsound and Plaintiff's summary conclusion that the D.C. legislation is preempted by HAVA is baseless.[2] If anything, HAVA *requires* states to adopt certain minimum requirements for conducting elections for *federal* office – Plaintiff's baseless claims appear to be directed to the impact of the Act upon elections

---

[1] Plaintiff's statements during the status hearing before the Court on December 13, 2007, when the Court gave Plaintiff an opportunity to explain his Complaint, did not clarify his claims at all. Such explanation did not illuminate Defendants to put them on notice of Plaintiff's is claims.

[2] The focus of HAVA is upon the mechanics of an election system, with a heavy emphasis upon the casting and counting of votes. *See, e.g., Sandusky County Democratic Party v. Blackwell,* 387 F.3d 565 (6th Cir. 2004). It does not implicate, much less prohibit, the District from establishing by law when District elections for federal offices will be held. *See Sandusky,* 387 F.3d at 576 ("Nowhere in the language or structure of HAVA as a whole is there any indication that Congress intended to strip from the States their traditional responsibility to administer elections."). HAVA not only does not preempt states from acting, it requires them to adopt certain minimum requirements for conducting elections for federal office. The Council of the District of Columbia enacted the Help America Vote Amendment Act of 2004, effective December 7, 2004 (D.C. Law 15-218; 51 DCR 9132), to bring the District in compliance with HAVA. The District's Board of Elections and Ethics implemented the necessary changes to bring the District in compliance. *See Moving Elections Forward in the District of Columbia: A Plan for Implementing the Help America Vote Act in the District of Columbia* (Aug. 2003), *reprinted* in 69 Fed. Reg. 14,180 (March 24, 2004), and available on the Board of Elections and Ethics website at www.boee.org.

for local office, as he indicates he may be a candidate for the Council, not for federal office. *Pl. Mem.* at ¶ 12.

The only provisions of HAVA to which Plaintiff cites are codified at 42 U.S.C. § 15381(a)(1) and (3).  That section, however, only requires the Election Administration Improvement Commission to conduct studies and issue reports on election administration issues for elections for federal office.  42 U.S.C. § 15381.  Obviously, the District has not violated that section.  Plaintiff quotes general language from that section stating that the Election Administration Improvement Commission shall conduct the studies "with the goal of promoting methods of voting and administering elections which . . . will be the most convenient, accessible, and easy to use for voters" and "will be nondiscriminatory and afford each eligible voter an equal opportunity to vote and have that vote counted." *Plaintiff's Motion* at ¶ 20, citing 42 U.S.C. § 15381(a)(1) and (3).  Based on this language, and his speculation concerning potential abuses of the District's electoral process by political parties, Plaintiff summarily concludes that "D.C. ACT 17-88, conflicts with HAVA," a federal statute, and is preempted." *Pl. Mem.* at ¶ 25.  Such conclusion fails to pass the test of logic and certainly fails to raise any right to relief above the speculative level as required to withstand a 12(b)(6) motion to dismiss.

Moreover, because the Act only affects the voting date, it hardly disenfranchises voters; it simply enables them to vote on a September date rather than a February date.  It seems that Plaintiff takes issue with a non-change in date, rather than a change – as he concedes that the September voting date was untouched.  *Complaint,* p.4, ¶ 2.

It is not clear in any part of Plaintiff's papers what change, or action by the legislature, actually affects him.  All Defendants can interpolate from the Complaint is

that Plaintiff is apparently concerned with a potential for lower voter turnout in September, but he fails to draw any logical nexus between the Act and his claims of disenfranchisement, discrimination, or conspiracy. *Complaint*, p. 3, ¶ 4. Plaintiff's apparent position also makes virtually no sense considering the statute still ensures that the elections occur on a date for which there is already a primary election scheduled. The Act amended the election law so that D.C. Official Code § 1-1001.10(a)(1) now reads: "elections of the officials shall be held, at the request of the party, on either [date]…if there is a primary election already scheduled for other purposes on the date requested."

"When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 127 S. Ct. at 1966, *quoting* 5 Wright & Miller § 1216, at 233-234 (additional case citations omitted). Plaintiff's allegations suffer the fatal deficiency of failing to raise a claim of entitlement to relief above the speculative level. Since Plaintiff's claims – to the extent they are at all comprehensible – could not withstand a motion to dismiss, Plaintiff certainly cannot demonstrate a substantial likelihood of success on the merits entitling him to preliminary injunctive relief

b.    *Rule 12(e)*

Plaintiff's pleading is so vague and ambiguous that Defendants cannot reasonably be expected to frame a responsive pleading. Fed. R. Civ. P. 12(e). Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for lack of detail." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd* 23 F.3d 398 (2d Cir. 1994) (citations omitted). Plaintiff's pleadings are both unintelligible and lacking detail.

There is no cause of action articulated in the Complaint.  Because Plaintiff's complaint would fail under Rule 8, as discussed above, a motion for a more definitive statement under Rule 12(e) would be appropriate and, thus, Plaintiff's ability to demonstrate a substantial likelihood of success on the merits is extraordinarily remote.

*c.*    *Rule 56*

Although the Court "must assume the truth of all statements proffered by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999).  Plaintiff's allegations of disenfranchisement and conspiracy, to the extent they can be discerned, clearly fit this definition – they are wholly conclusory and lack any evidentiary support.  As a matter of law, Plaintiff cannot show any entitlement to relief and Defendants cannot conceive of any potential evidence to support the claim that he has sustained actual harm.

3)  *Plaintiff's claims lack ripeness and he has no standing.*

Because plaintiff's claims of potential injury are dependent on "contingent future events," they are unripe.  *Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Defendants note that Plaintiff seems to be familiar with the election process, thus, it seems he is trying to assert a claim of voter disenfranchisement on behalf of *others*.  "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the

action (or forgone action) at issue." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Third-party standing is a variant of prudential standing doctrine, and case law is clear that a court may raise the issue *sua sponte* because it serves "the institutional obligations of the federal courts." *American Immigration Lawyers Assn. v. Reno*, 199 F.3d 1352, 1357–58 (D.C. Cir. 2000) (*quoting Animal Legal Defense Fund v. Espy*, 23 F.3d 496, 499 (D.C. Cir. 1994)).

There has been a long-standing presumption against third-party standing. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Singleton v. Wulff*, 428 U.S. 106, 113 (1976). Even where the same allegedly unconstitutional government action affects both the litigant and a third party, the litigant "cannot rest his claim to relief on the legal rights or interests of [the] third party." *Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990).  A litigant seeking to assert the rights of another party must satisfy three interrelated criteria: (1) the litigant must have suffered an injury in fact, (2) the litigant must have a close relation to the third party, and (3) there must exist some "hindrance" to the third party's ability to protect her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991) ("[all] three important criteria [must be] satisfied . . . ."). Plaintiff cannot satisfy any, let alone all three, of these criteria.

Plaintiff appears to be trying to predict how the Act may affect voters, but he also seems to separate himself from the voters, as he intends to be a candidate.  Thus, one can only assume that he brings up the issue of disenfranchisement on behalf of voters less informed than he.  He cannot provide any evidentiary support of injury to these persons and can only speculate whether or not they will even exercise their right to vote in the first place, let alone at some less popular time of year.  This position of trying to assert

rights on behalf of others generally makes standing substantially more difficult to establish. <u>Lujan</u>, 504 U.S. at 565. Plaintiff has not even scratched the surface of his burden.

        *4)  Plaintiff further lacks standing because any injury he alleges is speculative.*

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted). Plaintiff has done nothing but speak in the abstract of injuries to himself and D.C. voters, stating, by way of example, "meeting at time and place less known and inconvenience" (*Pl. Mem*. at ¶ 23), voters "likely not to have their vote counted based on arbitrary distinction," (*Id*. at ¶ 34), and parties coming up with "procedures unknown to the general public" (*Id*. at ¶ 33). Plaintiff's papers are replete with such statements, burdened by grammatical and typographical errors, making his purported claims impossible to understand.

      **B)**    **Plaintiff Fails to Show Irreparable Harm.**

To obtain a right to preliminary injunctive relief, Plaintiff must show irreparable harm. In order to determine whether irreparable harm exists, Plaintiff's injury must be both certain and great – it must be actual and not theoretical – and of such imminence that there is "clear and present" need for relief to prevent it. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Since Plaintiff's allegations of injury, to the extent they are understood at all, cannot even withstand the tests of ripeness and standing, he cannot possibly sustain his burden to demonstrate irreparable harm.

        1.   *Plaintiff does not allege actual injury.*

Plaintiff speculates that voters "may be" affected by a lack of information of primary election dates; however, this speculation is purely theoretical.  Plaintiff makes no reference to any concrete, reliable evidence that might support any conceivable irreparable harm.  *Nat'l Assn. of Psychiatric Health Sys. v. Shalala*, 120 F.Supp.2d 33, 44 (D.D.C. 2000) (plaintiffs failed to show irreparable harm in the absence of concrete, reliable evidence to support their contentions of such).  In the context of an alleged violation of a constitutional right, Plaintiff must do more than merely recite the purported the violation.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) (movant must do more than "merely allege a violation of freedom of expression in order to satisfy the irreparable injury prong of the preliminary injunction framework").  That, however, is all Plaintiff has done here; thus, he fails to prove irreparable harm.

Plaintiff claims that the change in law that allows political parties to choose between the presidential primary date in February and the District primary election date in September for the election of their party officials and delegates will "leave the parties officials with more options to disenfranchisement by a call to state conventions, caucuses and/or mass meeting at time and places less known and inconvenience to the general public and/or subject to cover charges." *Pl. Mem.* at ¶ 23.[3] The challenged provision,

---

[3] This ungrammatical and inarticulate statement is just one of the many which Defendants are forced to attempt to comprehend.

however, requires the parties to choose either the presidential primary date of February or

the District primary date of September.  There are no other choices.  The officers and

delegates will be selected on one of those dates, at an election that will be carried out at

polling places and pursuant to processes established and made known to the public by the

Board of Elections and Ethics.  The website for the Board of Elections and Ethics is full

of information regarding the District's election systems, including details about the

February 12 and September 9 primaries.[4]  Therefore, Plaintiff's rampant speculation

regarding potential, future abuses of the electoral process is factually unfounded as well

as premised upon a number of flawed assumptions.[5]  Such speculation does not amount

to actual irreparable injury to Plaintiff.

> 2.  *Plaintiff's failure to timely challenge this legislation tends to negate "imminence."*

The "imminence" train left the station long ago – the disputed legislation was

approved on July 25, 2007.  Plaintiff filed his complaint on November 20, 2007.   Any

injury Plaintiff alleges is self-created.  He could have asserted his claims at the time the

legislation passed (or even when it still was under construction by Council). By failing to

---

[4]The website is at www.dcboee.org.

[5]Among his many unsupported assumptions, Plaintiff claims holding the elections of party officials and delegates on the September primary date would disenfranchise voters because there would be a low turnout of voters for that primary, at which candidates for District office are selected, compared to that for a presidential primary.  *Pl. Mem.* at ¶ 4.  To the contrary, one of the reasons Councilmember Jack Evans cited for adopting the change made by the Election Date Amendment Act of 2007 was that "holding elections for certain local party officials in September makes sense because that is when Councilmembers and other District officials have primary elections, so there will be more participation." Report on Bill 17-169, the "Election Date Amendment Act of 2007," Council of the District of Columbia Committee on Workforce Development and Government Operations, May 30, 2007, at p. 2 ("Election Act Report"). At the May 16, 2007 public hearing on the Election Date Amendment Act of 2007, Alice P. Miller, Executive Director of the Board of Elections and Ethics stated that "the turnout for every election is unpredictable." She noted that the turnout for the 2000 and 2004 presidential primaries in the District had been only 8.9% and 12.9%, respectively, of all registered voters.

do so, Plaintiff has made it nearly impossible to have his claims adjudicated before he contends he and others might suffer the theoretical harm he alleges.  Plaintiff claims to be keenly aware of the electoral process, but waited some four months to challenge an election statute.  Thus, any claim Plaintiff may have had based on an election not occurring in February is likely to be mooted by the mere passage of time.

#### C.     The Balance of Equities Favors Denying Injunctive Relief.

If the Court were to grant Plaintiff the injunction he seeks, the District of Columbia, its citizens, and the electoral process would be substantially injured.  "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury."  *New Motor Vehicle Bd. of Calif., v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977).  While Plaintiff argues that voters will be disenfranchised, he fails to state what, if any, burden this legislation actually puts on voters.  Rather, the interests of the District, its citizens, and political parties would be injured by the injunctive relief sought.

"When a state electoral provision places no heavy burden on associational rights, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'"  *Clingman v. Beaver*, 544 U.S. 581, 593 (2005), *quoting Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (internal quotation marks omitted).   In *Clingman*, the Court found that the state's important regulatory interests included the preservation of "political parties as viable and identifiable interest groups," "enhance[ing] parties' electioneering and party-building efforts," and "guard[ing] against party raiding and 'sore loser' candidacies by spurned primary contenders."  *Clingman*, 544 U.S. at 593-94 (internal citations omitted).  The same

important regulatory interests are present here in the Act Plaintiff challenges, but, more importantly, in the statutory scheme within which the provisions he cites fit. D.C. Code § 1-1001.01, 1-1001.10.

The Act that Plaintiff challenges changed the date of the District of Columbia's presidential primary from the second Tuesday in January to the second Tuesday in February. That 2008 primary is scheduled for February 12, 2008, three weeks from the filing of this memorandum.[6] If plaintiff's motion for a preliminary injunction were granted and the District enjoined from implementing the changes to its election law made by the Act, the Presidential primary scheduled for February 12 could not be held. This outcome could not possibly be in the interest of the public. An injunction prohibiting the February 12 primary not only would squander the preparations and financial investments made in advance of this now imminent election, but would deprive District citizens of their opportunity to vote for their preferred candidate for President.[7]

On the other side of the equation is a highly speculative and cryptic theory propounded by Plaintiff that the statutory provision allowing a political party to choose either the date of a presidential primary in February, or the date of an already scheduled District primary election in September, as the date the party selects its various officers

---

[6]The Election Date Amendment Act of 2007 became law on July 25, 2007. Plaintiff did not file his complaint until on or about November 20, 2007. The hearing on Plaintiff's motion for preliminary injunction is scheduled for February 1, 2008.

[7]A prime consideration in selecting the second Tuesday in February as the date of the District's Presidential primary was that the neighboring states of Virginia and Maryland also were scheduled to hold their Presidential primaries on February 12, 2008. "(T)he idea behind scheduling the primary on February 12, 2008 is to have a regional primary ... to get coverage and participation not only from citizens in the District but from the presidential candidates themselves ...because Maryland and Virginia are in such close proximity to the District and that the television market in this area emanates from the District, the likelihood is that we may get some presidential candidates to come to the District if our presidential primary is held on the same day as Maryland's and Virginia's." Report on Bill 17-169, the "Election Date Amendment Act of 2007, Council of the District of Columbia Committee on Workforce Development and Government Operations, May 30, 2007, at 4.

and delegates somehow would open a proverbial Pandora's Box of unspecified improprieties that would result in widespread voter disenfranchisement. Plaintiff's indiscriminate employment of the words "discrimination" and "disenfranchisement" does not save his claim from being fairly and accurately characterized as pure conjecture. There is no concrete, individualized, imminent, irreparable injury here. *In re Navy Chaplaincy*, 516 F. Supp.2d 119, 126 (D.D.C. 2007) (A "case that rests on 'ifs' stands not on solid ground but on stilts of conjecture.").

Furthermore, any allusion Plaintiff makes to some favor this process created for incumbents and party favorites is just that – illusory. Rather, the political process, including the parties, would be substantially injured if the court grants Plaintiff's request for injunctive relief. On January 16, 2008, the United States Supreme Court decided in *New York State Bd. of Elections v. Lopez Torres*, 2008 U.S. LEXIS 1093, *10 (2008), that a political party has a First Amendment right to choose a candidate-selection process to select a representative of its political platform. The Act Plaintiff challenges does just that – it enables the parties to choose their candidate-selection process date from one of two options – February or September. The Court in *Lopez Torres* reinforced the principle that it is "'too plain for argument' that a State may prescribe party use of primaries or conventions to select nominees who appear on the general-election ballot." *Id*. at *11-12, *quoting American Party of Tex. v. White*, 415 U.S. 767, 781 (1974). If this is one of Plaintiff's grievances, albeit hard to discern from his unintelligible filings and argument, it does not hold water. The interests of the political parties clearly outweigh Plaintiff's theoretical and speculative injury.

In balancing the equity here, the Court should consider the electoral process itself as a potentially injured subject if Plaintiff's request were granted.  The Act benefits the electoral process by making only two possible dates for elections, rather than four possible dates, and enjoining its effect would hinder an orderly electoral process. Contrary to Plaintiff's unfounded assertions, there was no Machiavellian intent behind the Council's adoption of the Act.  Rather, Council eliminated the provision that allowed elections for delegates to conventions and conferences for political parties to be held on dates when general or special elections were scheduled "to avoid the confusion and the added costs and burden of having additional ballots prepared for party elections at general and special elections that already have a general ballot for voters and to restrict these party elections to days where primaries have already been scheduled." Report on Bill 17-169, the "Election Date Amendment Act of 2007," Council of the District of Columbia Committee on Workforce Development and Government Operations, May 30, 2007, at p. 2 ("Election Act Report").

Council decided to give the political parties the option to have their delegates and officials elected at either the February or September primary  because "parties would have flexibility in the date regarding the election of their officials and District taxpayers will not have to pay for an extra election." Election Act Report, at 7. Under the law existing at the time, there were four possible dates upon which political party officials or delegates could be elected.  The Act requires parties to elect all of its officials and delegates at one election, thereby saving the District money.  Election Act Report at 8-9. Thus, the interests of the District, political parties, and the tax-paying public would suffer

substantial injury if Plaintiff's motion for preliminary injunction is granted. Clearly, a balancing of the equities does not favor such a result.

### D.     The Public Interest Disfavors an Injunction

For the reasons stated above, it is clearly against the public interest to enjoin the District from enforcing its election law regarding election dates this year. If any disenfranchisement could occur, it would certainly be more likely if Plaintiff's motion were. Enjoining the enforcement of the Act would infringe upon the public's freedom of association with political parties because the parties could lose their opportunity to choose the candidate-selection process they believe will produce the best nominees to represent their platforms. *Lopez Torres*, 2008 U.S. LEXIS 1093 at *12. Plaintiff provides no concrete evidence of harm to the public if the legislation were to remain intact; rather, stopping the primary elections would result in such an obvious harm that it cannot possibly be in the public interest.

### CONCLUSION

Plaintiff has failed to satisfy any of the required elements for a preliminary injunction. Rather, each element weighs heavily against Plaintiff – he is unlikely to succeed on the merits, he has demonstrated no irreparable harm, the interests of Defendants and others would be adversely affected by an injunction, and the public interest favors denying an injunction.

WHEREFORE, for the reasons stated herein, Defendants respectfully request this Honorable Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of
Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity I Section
Civil Litigation Division


___/s/  Jayme B. Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625
Jayme.Kantor@dc.gov
Counsel for Defendant the District of Columbia

Joined by:

____/s/ John Hoellen_____
JOHN HOELLEN, #450354
Deputy General Counsel
Office of the General Counsel
Council of the District of Columbia
1350 Pennsylvania Avenue, N.W. - Suite 4
 Washington, D.C.  20004
 P(202) 724-8026
 F(202) 724-8129 (facsimile)
Jhoellen@dccouncil.us
Counsel for Defendant Vincent Gray